FILED

FEB 1 7 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                              )          Case No. 08-13738-B-7
                                                   )
Lloyd Preston Lister and                           )
Linda Lister,                                      )
                                                   )
                 Debtors.                          )
                                                   )
_____)
                                                   )
John Miller,                                       )          Adversary Proceeding No. 08-1201
                                                   )
                 Plaintiff,                        )
                                                   )
        v.                                         )
                                                   )
Lloyd Preston Lister,                              )
                                                   )
                 Defendant.                        )
                                                   )
_____)

**MEMORANDUM DECISION REGARDING COMPLAINT
TO DENY THE DEBTOR'S DISCHARGE**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

H. Ty Kharazi, Esq., appeared on behalf of plaintiff, John Miller (the "Plaintiff").

Scott Lyons, Esq., appeared on behalf of debtor/defendant, Lloyd Preston Lister ("Lloyd Lister").

1    This adversary proceeding concerns Lloyd Lister's right to a general

2    discharge. The Plaintiff contends that Lloyd Lister's discharge should be denied

3    pursuant to 11 U.S.C. § 727(a)(4)(A)[1] based on, *inter alia*, a false oath made in

4    connection with the disclosure and valuation of assets in his bankruptcy schedules.

5    This adversary proceeding was tried before the court and taken under submission

6    after the parties submitted proposed findings of fact and conclusions of law. For the

7    reasons set forth below, Lloyd Lister's general discharge will be denied.

8        This memorandum decision contains the court's findings of fact and

9    conclusions of law required by Federal Rule of Civil Procedure 52 (made applicable

10   to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052). The

11   court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 727 and

12   General Orders 182 and 330 of the U.S. District Court for the Eastern District of

13   California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (J).

14   **Background and Findings of Fact.**

15       This bankruptcy was filed by Lloyd Lister and his wife, Linda Lister

16   (together, the "Debtors"), on June 27, 2008. With the petition, the Debtors filed all

17   required schedules and the statement of financial affairs. The petition, the schedules

18   and the statement of financial affairs include affirmative statements under penalty of

19   perjury, signed by the Debtors, declaring that they had read the documents and that

20   the documents were truthful and accurate to the best of their knowledge,

21   information and belief.[2] The face page of the petition states that Lloyd Lister had

22

23       [1]Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are
24   to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy
     Procedure, Rules 1001-9036, as enacted and promulgated after October 17, 2005, the
25   effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
     Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 ("BAPCPA").
26

27       [2]Pursuant to this court's General Order 03-04 dated October 24, 2003, bankruptcy
     petitions and schedules may be signed, verified and filed electronically. For all cases filed
28   after January 2, 2003, the electronic filing system is the official record of the court.

been doing business under the name of "XLNT Auto Sales & Leasing, Inc.; FDBA ABI-Lister." In their summary of schedules, the Debtors listed real property assets valued at $316,000 and personal property valued at $116,115. The Debtors listed secured claims in the amount of $230,048 and general unsecured claims totaling $570,661.04. The Debtors' schedule B discloses an interest in two business entities identified only as "X-Auto Sales" and "ABI-Lister," both valued at $0.

On schedule I, the Debtor reported that he was employed as a mechanic for a business entity known as Lister Auto Repair ("LAR"), from which he received an average monthly income of $419. The Debtors did not report any "business income" associated with the operation of LAR. Schedule I also discloses that Linda Lister was receiving unemployment benefits in the amount of $1,200 per month. On schedule J, the Debtors reported monthly expenses of $3,162.34, which include a monthly mortgage payment of $1,187. Schedule J did not report any "business expenses" associated with the operation of LAR. On schedule B, the Debtors listed "hand tools" valued at $500. Schedule B did not disclose any other assets or equipment ordinarily associated with an automobile repair business.

The central issue in this adversary proceeding stems from the Plaintiff's charge that the Debtors did not fully and accurately disclose their interest in LAR.[3] Except for the "income" reference in schedule I, LAR is not mentioned anywhere else in the schedules. In the statement of financial affairs, at question 18, under "Nature location and name of business," there is a vague entry showing that the

---

Documents which the debtors must sign may be filed with electronic signatures in the "/s/ Name" format. Use of the "/s/ Name" signature format constitutes the filing attorney's representation "that an originally signed copy of the document exists and is in the [attorney's] possession at the time of filing." (General Order 03-04,¶ 10(d)).

[3]The Debtors filed a joint petition and many of the omissions referenced herein appear to involve information that would have been personally known to Linda Lister. However, Linda Lister was not named as a party to this adversary proceeding. Linda Lister's discharge was entered without objection on August 20, 2009.

Debtors had done business under the name "Lister Auto Repairs, 1978 to current." No other information is provided regarding the activities or assets of LAR or the Debtors' interest therein.

At trial, Lloyd Lister testified that he was an employee of and the manager of LAR. He stated that he had been the owner of LAR "at one time," but that he had given the business to an individual named Jerald Reifkohl ("Reifkohl"). Lloyd Lister did not offer any details of that transaction and Reifkohl did not appear or testify to corroborate the story. In subsequent testimony, Lloyd Lister acknowledged that the alleged transfer to Reifkohl had never been documented.

Lloyd Lister's personal accountant, Richard Large, testified that he had prepared the Debtors' personal income tax returns for at least eight years. On all of the tax returns, including the 2008 return, LAR had been listed as the Debtors' sole proprietorship. Lloyd Lister was still registered as the owner of LAR with applicable agencies of the State of California, including the State Board of Equalization. Lloyd Lister's name still appeared on the LAR bank account and he still wrote checks for LAR. The LAR bank account is not disclosed in the Debtors' schedules.[4] For some unexplained reason, Linda Lister deposited her paychecks into the LAR bank account and the Listers regularly used the LAR bank account to pay personal bills, including their home mortgage. As recently as April 2010, Lloyd Lister moved LAR to a new location in Clovis, California. Lloyd Lister signed the lease for the new facility. There was no evidence to suggest that Reifkohl had assumed any role in the operation of LAR.

Prior to the bankruptcy, Lloyd Lister was involved in other business activities, including a partnership known as ABI-Lister. ABI-Lister operated the

---

[4]Schedule B lists three bank accounts with deposit balances of $0. It also lists two credit union accounts with an aggregate balance of $45. None of these accounts were designated as business accounts, and none of them have a deposit balance that would reflect typical business activity.

4

business known as XLNT Auto Sales & Leasing ("XLNT").  It also had an interest in some commercial property on Minnewawa Avenue in Clovis, California, which the Debtors listed on schedule A as being their property in "fee simple."  At some point, a dispute erupted involving ABI-Lister, XLNT, and the Minnewawa property and Lloyd Lister found himself defending two civil actions filed in the Fresno County Superior Court.  In one of those actions, the Plaintiff, John Miller, obtained a judgment against Lloyd Lister for $85,000.

**Issues.**

In the fifth amended complaint, the Plaintiff seeks to deny Lloyd Lister's discharge for various reasons pled under § 727(a)(4)(A).  The Plaintiff contends in the second claim for relief that the Debtors' schedules are materially false with regard to the nondisclosure of LAR.  The ultimate issue presented in this adversary proceeding is, did Lloyd Lister knowingly and fraudulently make a false oath or account by failing to fully disclose an interest in LAR and its assets, when he signed and filed his bankruptcy schedules?

**Analysis and Conclusions of Law.**

**Denial of Discharge Under Section 727.**

Denial of a discharge is a severe sanction and § 727 is construed strictly in favor of the debtor.  *In re Murray*, 249 B.R. 223, 227 (E.D.N.Y. 2000).  However, a bankruptcy discharge is a privilege and may only be granted to the honest debtor.  *In re Leija*, 270 B.R. 497, 501 (Bankr. E.D. Cal. 2001), citing *Dubrowsky v. Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (additional citations omitted).

Denial of discharge under § 727(a)(4)(A) requires the plaintiff to show that the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.  The false oath or account must relate to a "material fact."  *Fogal Legware of Switzerland, Inc. v. Sheldon Wills and Joan Wills (In re Wills)* 243 B.R. 58, 62 (9th Cir. BAP 1999), citing *In re Aubrey*, 111 B.R. 268, 274 (9th

Cir. BAP 1990). The "false oath" may be a false statement or an omission in the schedules. *Id.*, citing *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

The purpose of laws such as § 727(a)(4) is, "to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *In re Leija*, 270 B.R. at 501, citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). Section 727(a)(4) is intended to enforce the debtor's duty of disclosure and to ensure that those with an interest in the administration of the estate receive reliable information. "'Bankruptcy Trustees lack the time and resources to play detective and uncover all the assets and transactions of their debtors.'" *In re Bailey*, 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992), citing *In re Martin*, 141 B.R. 986, 997 (Bankr. N.D. Ill.1992).

**The Bankruptcy Schedules Constitute an "Oath."**

When the debtor signs and files his bankruptcy schedules, the debtor attests, under penalty of perjury, that the facts represented therein, including the disclosure of assets, are complete and accurate. The signing and verification of bankruptcy schedules under penalty of perjury constitute an "oath" for purposes of § 727(a)(4). *In re Leija*, 270 B.R. at 502.

**The Debtors' Interest in LAR Was a Material Fact.**

The false "oath or account" must be as to a material fact. Materiality is defined broadly, it "may be material even if it does not cause direct financial prejudice to creditors." *Wills,* 243 B.R. at 62-63, citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). "Since § 727(a)(4) relates to the discovery of assets and enforces debtors' duty of disclosure, an omission can be material, even if the creditors were not prejudiced by the false statement." *In re Bailey*, 147 B.R. 157 at 163. Conversely, "a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge under § 727(a)(4)(A)." *Khalil v. Developers Surety and Indemnity Company (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007) (citations omitted).

6

1    Here, it is clear that LAR was a functioning business enterprise at the time
2   the bankruptcy was filed.  LAR had an active business operation, it maintained a
3   place of business, and Lloyd Lister derived his only income from it.  LAR was
4   treated for all purposes as the Debtors' sole proprietorship."  LAR had at least one
5   open bank account in which the Debtors commingled their money and which they
6   used as their own.  LAR was active enough that Lloyd Lister found it appropriate to
7   move the business to a new location and sign a new lease after the bankruptcy
8   petition was filed.  Notwithstanding any plans to give the business to Reifkohl,
9   Lloyd Lister retained all of the attributes of ownership and even reported his
10   ownership interest on his income tax returns.  LAR was a business entity which
11   should have been disclosed to the chapter 7 trustee so that the trustee could
12   investigate the extent of LAR's business activities and determine if assets were
13   available for the creditors.  The court is persuaded that the omission of LAR and its
14   assets from the Debtors' schedules was material for the purposes of § 727(a)(4)(A).

15   **The Omission of LAR Was Made Knowingly**.

16    The false statements must be made both "knowingly" and "fraudulently."
17   Courts have interpreted the "knowing" element to require more than carelessness or
18   recklessness.  In *In re Roberts*, 331 B.R. 876 (9th Cir. BAP 2005), the Bankruptcy
19   Appellate Panel held that the debtor must act "deliberately and consciously" in
20   failing to make the subject disclosures.  The *Roberts* court further held that neither
21   carelessness nor recklessness "measure up to the statutory requirement of 'knowing'
22   misconduct." *Id.* at 884.  The evidence must show that the debtor "knowingly and
23   fraudulently made a false oath." *Wills*, 243 B.R. at 64 (citation omitted).  The
24   statutory requirement that the false oath be made "knowingly" is satisfied if the
25   defendant's act is voluntary and intentional. *Leija*, 270 B.R. at 501.

26    Here, Lloyd Lister was an established businessman.  In addition to the
27   ownership and operation of LAR, he had been involved in the ABI-Lister
28   partnership and the operation of XLNT.  Lloyd Lister owned commercial real estate.

7

Lloyd Lister fully understood the importance of accurate disclosure. Moreover, Lloyd Lister fully understood that LAR had not yet been transferred in any way to Reifkohl at the time the bankruptcy commenced. This is not a case where the Debtors made a reasonable effort to disclose their interest in LAR and its assets, missing only some minor details. In preparing their schedules, the Debtors treated LAR as if it didn't exist. When Lloyd Lister reviewed and signed the final draft of his bankruptcy pleadings, he had an opportunity to correct any errors or omissions. He signed them under penalty of perjury attesting to their completeness and accuracy. From these circumstances, the court is persuaded that Lloyd Lister was not just careless or negligent in the preparation of his schedules. The omission of LAR from the Debtors' bankruptcy schedules was intentional, deliberate and was done knowingly for purposes of § 727(a)(4)(A).

**The Omission of LAR Was Fraudulent.**

Finally, the plaintiff must also show that the debtor "fraudulently" made a false oath, and the fraudulent intent was actual, not merely constructive. *Wills*, 243 B.R. at 64 (citations omitted). "'The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions. . . . [I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud.'" *Murray*, 249 B.R. at 228, quoting *In re Dubrowsky*, 244 B.R. at 571-72 (citations omitted). "The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction . . . . '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.'" *In re Leija*, 270 B.R. at 501 (citation omitted).

The Ninth Circuit Bankruptcy Appellate Panel has recently clarified the "fraud" standard, "[E]vidence of reckless indifference to accuracy may be probative

8

of intent even though reckless indifference alone does not suffice to establish the requisite intent." *In re Khalil*, 379 B.R. at 166. Since debtors seldom admit fraudulent intent, fraudulent intent must usually be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. *Id.* at 174 (citations omitted).

For all of the reasons already discussed above, the court is persuaded that LAR and its assets were omitted from the Debtors' schedules in a deliberate effort to prevent the chapter 7 trustee from discovering and administering those assets for the benefit of creditors. Lloyd Lister was sophisticated enough to know that the disclosure of LAR in a chapter 7 bankruptcy would mean the certain loss, through liquidation by the trustee, of the assets from which Lloyd Lister derived his only disclosed income. The Debtors continued to commingle their assets with, and use LAR as their own for all purposes. Lloyd Lister's fantasy about having given the business to Reifkohl was contrived and baseless. The failure to disclose LAR and its assets prevented the trustee and creditors from gaining a clear picture of Lloyd Lister's financial status. The court is persuaded that Lloyd Lister had no intent to make the full extent of his assets known to the bankruptcy trustee and that the failure to disclose those assets was "fraudulent" within the meaning of § 727(a)(4)A).

**Conclusion.**

Based on the foregoing, the court finds and concludes that Lloyd Lister made a materially false oath when he signed his bankruptcy schedules under penalty of perjury after knowingly and fraudulently failing to disclose his ongoing interest in Lister Auto Repair and its assets. Lloyd Lister's discharge will be denied pursuant to § 727(a)(4)(A). A separate judgment will be entered.

Dated:  February ___/7___, 2011

_____
W. Richard Lee
United States Bankruptcy Judge

9